

# Fourth Court of Appeals
## San Antonio, Texas

## OPINION

No. 04-15-00805-CR

Edward James **DWYER**, Jr.,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 198th Judicial District Court, Kerr County, Texas
Trial Court No. B14-568
Honorable M. Rex Emerson, Judge Presiding

Opinion by:     Luz Elena D. Chapa, Justice

Sitting:        Rebeca C. Martinez, Justice
                Patricia O. Alvarez, Justice
                Luz Elena D. Chapa, Justice

Delivered and Filed:  July 26, 2017

AFFIRMED

A jury convicted Edward James Dwyer, Jr. for continuous sexual abuse of a child and aggravated sexual assault of a child. On appeal, Dwyer argues there is legally insufficient evidence to support his conviction for continuous sexual abuse of a child; he was unable to intelligently exercise his peremptory strikes because he and his trial counsel were unable to view the venire panel while making peremptory strikes; and the trial court erroneously instructed the jury to disregard the dates alleged in the indictment, resulting in two convictions for the same offense in violation of the Double Jeopardy Clause. We affirm the trial court's judgment.

## PROCEDURAL BACKGROUND

A grand jury indicted Dwyer for the continuous sexual abuse of C.D., who is Dwyer's daughter. The indictment alleged Dwyer intentionally or knowingly touched C.D.'s genitals with his hand at least twice between January 15, 2011, and June 6, 2012. The grand jury also indicted Dwyer for aggravated sexual assault of C.D. The indictment alleged Dwyer intentionally and knowingly caused his finger to penetrate C.D.'s sexual organ on or about June 12, 2012. The indictment further alleged C.D. was under the age of fourteen at the time of the alleged offenses. Dwyer pled not guilty, and the case proceeded to a jury trial.

The State presented the expert witness testimony of Carol Twiss, who testified about typical patterns of children's disclosure of sexual abuse; the testimony of Darin Trahan, an investigator with the Kerrville Police Department who interviewed Dwyer about C.D.'s outcry; and the testimony of C.D. The trial court also admitted a video recording of Dwyer's interview with Trahan. Dwyer testified in his defense. After closing arguments, the jury found Dwyer guilty of both offenses as charged in the indictment, and the trial court assessed Dwyer's punishment. The trial court imposed Dwyer's sentences, and Dwyer filed a timely notice of appeal.

## LEGAL SUFFICIENCY

Dwyer argues there is legally insufficient evidence that he "touched C.D. with the intent to arouse or gratify his sexual desire on more than one occasion over a period greater than thirty days." In reviewing the legal sufficiency of the evidence, we ask whether "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *accord Laster v. State*, 275 S.W.3d 512, 517 (Tex. Crim. App. 2009). We review the evidence "in the light most favorable to the verdict." *Merritt v. State*, 368 S.W.3d 516, 525 (Tex. Crim. App. 2012). "Our role on appeal is restricted to guarding against the rare occurrence when a factfinder does not act rationally," and we must "defer to the responsibility

of the trier of fact to fairly resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010) (quotation marks and citations omitted).

The essential elements of continuous sexual assault of a child, as alleged in the indictment, are set out in section 21.02(b) of the Texas Penal Code. TEX. PENAL CODE ANN. § 21.02(b) (West Supp. 2016). Section 21.02(b) provides:

> A person commits an offense if: (1) during a period that is 30 or more days in duration, the person commits two or more acts of sexual abuse, regardless of whether the acts of sexual abuse are committed against one or more victims; and (2) at the time of the commission of each of the acts of sexual abuse, the actor is 17 years of age or older and the victim is a child younger than 14 years of age.

*Id.* (formatting modified). An "act of sexual abuse" includes touching any part of a child's genitals "with intent to arouse or gratify the sexual desire of any person." *Id.* §§ 21.01(2), 21.02(c)(2), 21.11(a)(1) (West 2011 & Supp. 2016). Dwyer challenges only the legal sufficiency of the evidence that he touched C.D.'s genitals "with the intent to arouse or gratify his sexual desire on more than one occasion over a period greater than thirty days."

C.D. testified June 6, 2012, was a significant day in her life because her mother died suddenly that day. She testified Dwyer sexually abused her before her mother passed away. C.D. explained, "[Dwyer] would touch [her] inappropriately, obviously, and it would start off seeming like it was innocent and then escalate." She clarified, "[Dwyer] would touch [her] vagina in different ways each time" with "[h]is hands."

C.D. testified Dwyer would touch her "typically when [she] was asleep" and "[she] would wake up from him touching [her]." C.D. testified she believed Dwyer's touching was "[d]eliberate." She stated the touching incidents occurred more than twice and "[s]ometimes" multiple times a week "[s]ince January of 2011." She also stated that once while touching her, "[Dwyer] said, 'Do you want what your body's telling me you want?'" C.D. described Dwyer's

touching of her vagina as "[r]ubbing" for "[l]onger" than a couple of seconds and "[s]ometimes" more than a minute. C.D. testified she did not know whether Dwyer became aroused when he touched her.

Dwyer testified he had no memory of some of the incidents about which C.D. testified, but "a typical situation" was when he and C.D. were watching television and C.D. would "plop her legs up into [his] lap . . . and [he]'d be sitting there rubbing her legs." Dwyer stated, "There were a couple of times that [he] got close to her vagina, but it was inadvertent," and he would stop "sliding [his] hand up and down her leg" when "[he] would feel [his] fingers brush against fabric."[1]

Dwyer testified he believed C.D. was generally truthful and was "not aware of any time that she has lied," but C.D. was "[p]robably" unhappy that he would not allow her to leave home and live elsewhere. He also testified C.D. had been untruthful with the jury, but she was telling the truth when she said he gave her multiple massages while they were on the couch.

Dwyer stated he was aroused "[o]nce or twice" when he was giving C.D. massages, but denied asking her, "Do you want what your body's telling me you want?" He also stated that, at times, he could smell her when she was "through with her period" and it would arouse him on rare occasions, but not fully. Dwyer testified that "within a day or so" after his interview with Investigator Trahan, he left Texas but was extradited back to the state.

During his interview with Trahan, Dwyer initially stated he came close to touching C.D.'s private part a couple of times and "[his] fingers probably grazed that area," but "[he could] not recall a time that has ever happened." Dwyer guessed it was possible that once while giving C.D. a back massage, his fingertip went underneath C.D.'s panties and he possibly touched C.D.'s vagina one or two times. Dwyer stated he "maybe" was "semi" aroused by massaging C.D. He

---

[1] Dwyer stated during his interview with Investigator Trahan that when he used the word "fabric," he was referring specifically to C.D.'s underwear.

described another incident when C.D. put her legs on him, and he rubbed her legs until he felt C.D.'s panties. He stated he "grazed her panty covered vulva a few times," but only the "outer fold," and he agreed with Trahan that he did not "go inside." Toward the end of the interview, Dwyer admitted C.D. was a "temptation" that he tried, but failed, to "fight." He also admitted he deliberately touched C.D.'s vagina "to see what she would do" and "[he] was kind of curious to see just how far she would let somebody go," but stated it was "mostly to know if [he] had anything to worry about . . . as far as her being sexually active."

In his brief, Dwyer acknowledges there is direct evidence that, on one occasion, he was aroused by touching C.D.'s genitals. He argues, however, that C.D. equivocated in her testimony about whether she thought Dwyer was aroused on other occasions when he was touching her. Dwyer further argues C.D. merely testified to a vague pattern of abuse. However, Dwyer stated during his interview and testified at trial he was occasionally aroused by C.D. and aroused when he massaged her. Dwyer testified he got aroused when giving C.D. massages "[o]nce or twice." He also admitted during his interview that he deliberately touched C.D.'s vagina. C.D. testified Dwyer rubbed her vagina on multiple occasions, sometimes for more than a minute. A rational jury could have inferred from the evidence that Dwyer deliberately touched part of C.D.'s genitals on more than one occasion to arouse or gratify his sexual desires. C.D.'s testimony shows these "touching" incidents started as early as January 2011, continued through June 6, 2012, and occurred on numerous occasions during some weeks. We therefore hold a rational jury could have found Dwyer had engaged in an act of sexual abuse with the intent to arouse or gratify his sexual desire on more than one occasion over a period of greater than thirty days. *See Laster*, 275 S.W.3d at 517.

**INABILITY TO VIEW THE VENIRE PANEL WHILE EXERCISING PEREMPTORY STRIKES**

Dwyer argues the trial court erred by excusing the venire panel during the time the parties exercised their peremptory strikes. The day before trial, Dwyer filed a "motion to view the entire juror panel while making strikes." Dwyer requested that the trial court order all venire members "to remain in their assigned/numbered, seats/spaces, while [his] attorney is exercising or making his juror strikes." He argued he was entitled under article 1, section 10 of the Texas Constitution, and the Sixth Amendment of the U.S. Constitution, to view the venire panel while making his strikes.

Before voir dire, Dwyer presented his motion to the trial court and reiterated the argument in his motion. Dwyer's counsel explained:

> if the people aren't in the courtroom -- [Dwyer] might recognize somebody at a later point and if they're not in the courtroom, he can't recognize them to talk to me and advise me to be able to make a strike or give me an opinion about his strike.

Counsel also asserted he cannot make the decision of who to strike "unless the people are here sitting in their numbered spot so [counsel] know[s] who they are." The trial court denied the motion.

The parties conducted general voir dire and individual voir dire followed at the bench. At the conclusion of individual voir dire, the trial court gave the parties twenty minutes to make their peremptory strikes. Dwyer re-urged his motion and requested that the trial court order the venire panel to remain in the courtroom so counsel could observe them while deciding who to strike. The trial court again denied the motion.

On appeal, Dwyer argues the trial court erred by denying his request because he and counsel were "unable to assess [the venire members'] body language or make side by side visual comparisons while making his strikes." He contends he lacked "the benefit of a contemporaneous visual examination of the venire panel as it was winnowed into the jury." He also contends "[h]e

was unable to compare the panelists' appearance, demeanor, and reaction to the strikes." Dwyer states the trial court's denial of his motion "robbed [him] of crucial data concerning the venire panel."

"Trial courts have broad discretion over the jury selection process in Texas." *Rios v. State*, 122 S.W.3d 194, 197 (Tex. Crim. App. 2003). We will not reverse a trial court's judgment unless the trial court abuses its discretion. *Clark v. State*, 608 S.W.2d 667, 669 (Tex. Crim. App. [Panel Op.] 1980). A trial court does not abuse its discretion unless its ruling is arbitrary, unreasonable, or without reference to any guiding rules and principles. *State v. Hill*, 499 S.W.3d 853, 865 (Tex. Crim. App. 2016).

A defendant has the right "to intelligently exercise his peremptory strikes." *Gonzales v. State*, 2 S.W.3d 600, 602-03 (Tex. App.—Texarkana 1999, pet. ref'd). This right "requires that counsel be permitted to question the members of the jury panel." *Id.* at 603. Generally, a trial court abuses its discretion in this context when it denies the defendant's request "to discover a juror's views on an issue applicable to the case." *See id.* Moreover, "[i]t is within the trial court's discretion to prohibit improper questions and to place reasonable time limits on voir dire." *Rios*, 122 S.W.3d at 197.

The record shows Dwyer and his counsel were present for the entire voir dire, including general voir dire and individual voir dire at the bench. Dwyer does not contend that he was unable to ask the venire panel any particular question or that the trial court gave him insufficient time for either general voir dire or individual voir dire. Dwyer also does not complain he was unable to view the venire members' reactions to questioning during voir dire. We therefore presume Dwyer had sufficient time to conduct voir dire and observe the jurors' reactions to questioning in order to intelligently exercise his peremptory strikes, at least until the time the trial court gave the parties twenty minutes to decide who to peremptorily strike. *See id.*; *see also Light v. State*, 15 S.W.3d

104, 107 (Tex. Crim. App. 2000) (explaining the presumption of regularity requires us to "indulge every presumption" in favor of the regularity of proceedings in a trial court). We must therefore address whether the trial court denied Dwyer's right to intelligently exercise his peremptory strikes by excusing the venire panel while Dwyer and his counsel decided who to strike.

Dwyer suggests (1) it was impossible for him to confer with trial counsel about who to strike without being able to see the entire venire panel while making strikes; and (2) he is entitled to view the venire members' reactions to the parties' decisions about who to strike. The record does not show Dwyer or his trial counsel were unable to take notes or use other memory aids during voir dire. The record also does not show Dwyer and his counsel were unable to confer about venire members' verbal responses or nonverbal reactions during either voir dire or the twenty minutes the trial court gave the parties to make their strikes. Dwyer argues he should have been afforded an opportunity to observe the venire panel's reactions to his peremptory strikes, but a venire member's reaction to the parties' exercise of peremptory strikes is not a "view[] on an issue applicable to the case." *Cf. Gonzales*, 2 S.W.3d at 603. We hold the trial court did not abuse its discretion by denying Dwyer's request to require the members of the venire panel to remain in their assigned seats while he made his peremptory strikes.[2]

### DOUBLE JEOPARDY

Dwyer argues "[t]he jury was improperly charged that it was not bound by the dates described in the indictment, [which] permitted them to base [Dwyer's] convictions for both aggravated sexual assault and continuous sexual abuse based on a single instance of digital penetration and placed [him] in double jeopardy." During the charge conference, Dwyer did not object to the jury charge or raise any issue of double jeopardy. Because Dwyer's double jeopardy

---

[2] Dwyer also complains the trial court erred by failing to state why it denied his motion, but he does not cite to any authority suggesting the trial court is required to state the reasons for its rulings.

claims were not raised at or before the time the charge was submitted to the jury, we may not reverse the trial court's judgment unless the double jeopardy violation is apparent on the face of the record. *See Gonzalez v. State*, 8 S.W.3d 640, 642-45 (Tex. Crim. App. 2000).

"The Double Jeopardy Clause of the Fifth Amendment, applicable to the states through the Fourteenth Amendment, protects an accused from being punished more than once for the same offense in a single prosecution." *Carmichael v. State*, 505 S.W.3d 95, 100 (Tex. App.—San Antonio 2016, pet. ref'd). In this context, two offenses are "the same offense" if one is a lesser-included offense of the other, or if the Legislature has made it clear that only one punishment is intended for the two offenses. *Id.* Whether two offenses are the "same" is a matter of legislative intent. *Id.*

Aggravated sexual assault "is a lesser-included offense of continuous sexual abuse, and is considered a 'predicate' offense under the continuous sexual abuse statute." *See id.*; *see also* TEX. PENAL CODE ANN. § 21.02(e). Section 21.02(e) of the Texas Penal Code provides:

> A defendant may not be convicted in the same criminal action of [aggravated sexual assault of a child] the victim of which is the same victim as a victim of [alleged continuous sexual abuse of a child] unless [aggravated sexual assault of a child]:
> (1) is charged in the alternative;
> (2) occurred outside the period in which the [alleged continuous sexual abuse of a child] was committed; or
> (3) is considered by the trier of fact to be a lesser included offense of [continuous sexual abuse of a child].

TEX. PENAL CODE ANN. § 21.02(e). "[T]he Legislature did not intend to allow a defendant convicted of continuous sexual abuse to be also convicted for aggravated sexual assault of the same child if the aggravated sexual assault at issue and the continuous sexual assault both occurred within the same time periods." *Carmichael*, 505 S.W.3d at 100-01. Conversely, the Legislature did not intend for continuous sexual abuse of a child and aggravated sexual assault of a child to be the "same offense" if the alleged aggravated sexual assault "occurred outside of the period in which

the [alleged continuous sexual abuse of a child] was committed." *See* § 21.02(e)(2); *cf. Carmichael*, 505 S.W.3d at 100-01.

The indictment alleged Dwyer committed two offenses: continuous sexual abuse of a child and aggravated sexual assault of a child. In Count I, the indictment alleged:

> On or about the 15th day of January, 2011, through June 6, 2012, over a period that was 30 days or more in duration, [Dwyer] committed two or more acts of sexual abuse against C.D., a child under the age of 14 years and not the wife of [Dwyer], in Kerr County, Texas, said acts of sexual abuse including violations of one or more of the following penal laws, namely:
>
> > A. Indecency with a Child by Contact: With the intent to arouse or gratify the sexual desire of [Dwyer], intentionally or knowingly engaged in sexual contact with C.D. by touching the genitals of C.D. with his hand or a portion thereof
> >
> > B. Indecency with a Child by Contact: With the intent to arouse or gratify the sexual desire of [Dwyer], intentionally or knowingly engaged in sexual contact with C.D. by touching the genitals of C.D. with his hand or a portion thereof

(formatting modified). Count II of the indictment alleged:

> On or about June 12, 2012, and before the presentment of this indictment, in said county and state, did intentionally and knowingly sexually assault C.D. by causing the finger of [Dwyer] to penetrate the female sex organ of C.D., a child younger than 14 years of age and not the spouse of [Dwyer].

(formatting modified).[3] The date of June 12, 2012, is outside the period of January 15, 2011, to June 6, 2012. Thus, the alleged aggravated sexual assault "occurred outside of the period in which the [alleged continuous sexual abuse of a child] was committed." *See* § 21.02(e); *cf. Carmichael*, 505 S.W.3d at 100-01. Consequently, a double jeopardy violation is not apparent on the face of this record as required for reversal of Dwyer's conviction. *See Gonzalez*, 8 S.W.3d at 642-45.

---

[3] The jury charge tracked the allegations in the indictment, and the jury found Dwyer guilty of the offenses as charged in the indictment.

**CHARGE ERROR**

Dwyer argues, "The [jury] charge incorrectly informed the jury that it should disregard the date range alleged for count I, continuous sexual abuse." He argues "this error substantially bolstered the case against [him] by permitting the jury to consider count II of the indictment as a predicate offense for count I." The charge instructed the jury:

> You are instructed that members of the jury are not required to agree unanimously on which specific acts of sexual abuse, if any, were committed by the defendant in Count One, or the exact date when those acts were committed, if any. The jury must agree unanimously that the defendant, during a period that was 30 or more days in duration, committed two or more acts of sexual abuse as that term has been previously defined.
> . . . .
>
> You are further charged that the State is not required to prove the exact dates alleged in the indictment, but may prove the offense, if any, to have been committed at any time prior to presentment, so long as the offense if any, occurred within ten years of the date of presentment of the indictment.

Dwyer acknowledges these instructions are "unobjectionable,"[4] but the trial court erred by omitting an instruction that the jury could not convict him for both offenses unless the aggravated sexual assault of a child occurred outside the period in which the alleged continuous sexual abuse of a child was committed.

"A trial court must instruct the jury on the law applicable to the case." *State v. Ambrose*, 457 S.W.3d 154, 159 (Tex. App.—San Antonio 2015), *aff'd*, 487 S.W.3d 587 (Tex. Crim. App. 2016). But when, as here, the appellant failed to object to the jury charge at trial, we must affirm the trial court's judgment unless we determine the appellant suffered egregious harm. *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1984). The egregious harm standard is difficult to meet. *Ambrose*, 457 S.W.3d at 160. Egregious harm "affects the very basis of the case, deprives

---

[4] "It was not incorrect to instruct the jurors that in a prosecution for continuous sexual abuse of a young child, the State is not bound to prove the exact dates alleged in the indictment." *See Martin v. State*, 335 S.W.3d 867, 874 (Tex. App.—Austin 2011, pet. ref'd).

the defendant of a valuable right, or vitally affects a defensive theory." *Id.* In assessing the harm caused by failing to properly instruct the jury, we consider "the entire jury charge, the state of the evidence, including the contested issues and weight of probative evidence, the argument of counsel and any other relevant information revealed by the record of the trial as a whole." *Almanza*, 686 S.W.2d at 171.

## A. The Entire Jury Charge

The jury charge instructed the jury that Dwyer was charged with two offenses. The first offense was continuous sexual abuse of a child "alleged to have been committed on or about the 15th day of January, 2011, through June 6, 2012." The second was "aggravated sexual assault of a child, alleged to have been committed on or about the 12th day of June, 2012." The next two paragraphs contained in the charge explained the two offenses:

> 1.
> A person commits an offense of continuous sexual abuse of [a] young child or children if, during a period that is 30 days or more in duration, the person commits two or more acts of sexual abuse, regardless of whether the acts of sexual abuse are committed against one or more victims and, at the time of the commission of each of the acts of sexual abuse, the person was 17 years of age or older and the victim is a child younger than 14 years of age.

> 2.
> Our law provides that a person commits the offense of aggravated sexual assault of a child if the person intentionally or knowingly causes the penetration of the anus or female sexual organ of a child by any means and the victim is younger than 14 years of age.

The subsequent paragraphs defined "child" and "actor," as well as "act of sexual abuse." The charge defined "act of sexual abuse" as "any act that is a violation of indecency with a child if committed in a manner other than by touching, including touching through clothing, the breast of a child." The charge then instructed the jury it was "not required to agree unanimously on . . . the exact date when th[e] [alleged] acts were committed." The charge also defined the culpable mental states for the offenses.

The next two paragraphs contained in the charge were the application paragraphs:

4.

Now if you find from the evidence beyond a reasonable doubt that on or about the 15th day of January, 2011 through June 6, 2012, over a period that was 30 days or more in duration, in Kerr County, Texas . . . [Dwyer] did then and there commit two or more acts of sexual abuse against C.D., in Kerr County, Texas, said acts of sexual abuse including violations of one or more of the following penal laws, namely: indecency with a child by contact: with the intent to arouse or gratify the sexual desire of [Dwyer], intentionally or knowingly engage in sexual contact with C.D. by touching the genitals of C.D. with his hand or a portion thereof, a child who was then and there younger than 14 years of age, then you will find the defendant "guilty" of continuous sexual abuse of a young child or children . . . as charged in the indictment in Count One.

Unless you so find beyond a reasonable doubt, or if you have a reasonable doubt thereof, you will find the defendant "not guilty" of continuous sexual abuse of [a] young child or children, as charged in the indictment in Count One.

5.

Now, if you find from the evidence beyond a reasonable doubt that on or about the 12th day of June, 2012, in KERR County, Texas . . . [Dwyer], did intentionally and knowingly sexually assault C.D. by causing [Dwyer]'s finger to penetrate the female sexual organ of C.D., and C.D. was a child under the age of 14 and not the spouse of [Dwyer], then you will find the defendant "guilty" of aggravated sexual assault of a child, as charged in the indictment in Count Two.

Unless you so find from the evidence beyond a reasonable doubt, or if you have a reasonable doubt thereof you will find the defendant "not guilty" of aggravated sexual assault of a child, as charged in the indictment in Count Two.

The charge further instructed the jury on the presumption of innocence, the State's burden of proof, the differences between direct and circumstantial evidence, impermissible inferences, and impermissible juror conduct. The charge also included instructions that "the State is not required to prove the exact dates alleged in the indictment, but may prove the offense, if any, to have been committed at any time prior to presentment, so long as the offense if any, occurred within ten years of the date of presentment of the indictment."

Dwyer characterizes the instructions about the exact dates of the offenses as instructions to entirely "disregard" the alleged offense dates. We disagree. The charge does not contain an instruction suggesting the jury may entirely disregard the alleged dates of the offenses. The charge

instructs the jury that the State does not need to prove the offenses took place on any given "exact date" or "dates." However, the charge described the "continuous sexual abuse of a child" offense as including indecency with a child by contact, specifically "by touching the genitals of C.D. with his hand or a portion thereof." The charge also described the "aggravated sexual assault of a child" offense as including intentionally or knowingly "causing [Dwyer's] finger to penetrate the female sex organ of C.D." In light of the charge's instructions that the State need not prove the exact dates on which the alleged offenses occurred, the charge as a whole raises the theoretical possibility that the jury relied on evidence of the "aggravated sexual assault of a child" offense to find Dwyer guilty of the "continuous sexual abuse of a child" offense in violation of Dwyer's double jeopardy rights.

## B. The State of the Evidence

As described in our analysis of Dwyer's legal sufficiency challenge, C.D. testified Dwyer touched or rubbed her genitals on multiple occasions before June 6, 2012. During his interview with Investigator Trahan, Dwyer stated he deliberately touched C.D.'s vagina. Dwyer testified at trial, however, the "times that [he] got close to [C.D.'s] vagina" were "inadvertent." In addition to this evidence, C.D. testified about a separate incident when she woke up and discovered Dwyer had his fingertips inside of her vagina. She testified this incident occurred less than a week after her mother died. C.D. testified she specifically recalled the timing of this incident because it was the first night she had been able to sleep after her mother died. Dwyer denied putting any part of his fingers inside C.D.'s vagina.

## C. Arguments of Counsel & Other Parts of the Record

During general voir dire, the prosecution informed the venire panel that "specifics," including specific dates, "are not required," and gave examples of how the jury's disagreements about the specific dates of occurrences were immaterial so long as the jury were to agree that

sexual abuse "occurred two or more times." The prosecution stated that depending upon the child's age, the child "may not be calendar literate." The prosecution also told the venire panel, "Sometimes they can say it was before or after an event, but as far as knowing the day, the month and the year, they can't be specific, so it's not required."

During the State's opening statement, the prosecution explained to the jury it selected June 6, 2012 as the cut-off date for the continuous sexual abuse charge because June 6, 2012, "was an easy day for [C.D.] to remember because that's the day her mother passed away, so she can relate to things happening before that date and after that date." The prosecution further stated C.D. would testify that within a week of her mother dying, Dwyer inserted his fingertips inside her vagina while she was sleeping.

During closing arguments, the prosecution did not emphasize that the State was not required to prove specific dates. The prosecution also did not tell the jury it could rely upon the incident after C.D.'s mother died to convict Dwyer of both offenses. The prosecution focused on the evidence supporting the alleged offenses and the credibility of the witnesses. Dwyer's counsel asked the jury to focus on the evidence of arousal or gratification of sexual desire. Dwyer's counsel noted, "We're not arguing about whether anything happened or didn't happen on the 12th or whether it happened or didn't happen in Kerr County. We're not arguing about that." He also stated the State had the burden to prove a minimum of two acts occurred over a period of thirty days.

## D. Analysis

The jury charge lacked an instruction that the jury may not convict Dwyer of both aggravated sexual assault of C.D. and continuous sexual assault of C.D. unless the aggravated sexual assault occurred outside the period in which the continuous sexual abuse of C.D. was committed. The omission of this instruction raised a theoretical possibility that the jury based both of its verdicts on Dwyer's penetration of C.D.'s vagina with his finger after C.D.'s mother died,

and violated Dwyer's double jeopardy rights. But "[a]n egregious harm determination must be based on a finding of actual rather than theoretical harm." *Cosio v. State*, 353 S.W.3d 766, 777 (Tex. Crim. App. 2011).

Although the State informed the venire panel during voir dire that the State was not required to prove specific dates, the State drew the jury's attention to the importance of June 6, 2012, during its opening statement. Consistent with the State's opening statement, C.D. specifically testified she remembered the incident when Dwyer put his fingertips inside her vagina because it was the first night she had slept since June 6, 2012, the date on which her mother died suddenly. She testified that before June 6, 2012, Dwyer touched her vagina more than twice and there were some weeks that Dwyer touched her vagina on multiple occasions. She also testified that after June 6, 2012, Dwyer put her fingertips inside her vagina while she was sleeping.

During closing arguments, Dwyer's counsel expressly stated he was not contesting the evidence regarding the dates. Instead, Dwyer's defensive theory was based on the absence of direct evidence that he was actually aroused more than once during the thirty-day period. However, Dwyer made numerous statements during his interview that he was aroused by C.D. *See Martin*, 335 S.W.3d at 876 (considering the appellant's defensive theory in an egregious harm analysis).

For the jury to have based both convictions on Dwyer's penetration of C.D.'s vagina with his fingers after C.D.'s mother died, the jury must have (1) found C.D.'s testimony about the penetration incident more credible than Dwyer's testimony denying the incident had occurred; (2) believed C.D.'s testimony that Dwyer touched or rubbed her vagina on one occasion before her mother died; and (3) disbelieved C.D.'s uncontroverted testimony that Dwyer touched or rubbed her vagina more than once before her mother died. The evidence shows only one articulated reason why C.D. might have lied; according to Dwyer, C.D. was "probably" upset with him that he would not let her leave his home and live elsewhere. But if the jury accepted Dwyer's explanation that

C.D. was lying because she was angry at him, the jury likely would not have found C.D.'s testimony more credible than Dwyer's testimony. *See id.* (considering the jury's likely view of the evidence and resolution of credibility issues in an egregious harm analysis). Furthermore, Dwyer testified C.D. was generally truthful and he could not recall a time when she had lied to him. Dwyer, however, gave conflicting statements about his conduct, and during his interview with Investigator Trahan, he stated he deliberately touched C.D.'s vagina and was aroused by C.D. We conclude that even if the jury charge erroneously lacked a necessary instruction, the record as a whole shows Dwyer was not egregiously harmed by the omission. *See Almanza*, 686 S.W.2d at 171.

## CONCLUSION

We affirm the trial court's judgment.

Luz Elena D. Chapa, Justice

PUBLISH