

**NUMBER 13-17-00599-CR**

**COURT OF APPEALS**

**THIRTEENTH DISTRICT OF TEXAS**

**CORPUS CHRISTI - EDINBURG**

CHRISTOPHER GARZA,                                           **Appellant,**

**v.**

THE STATE OF TEXAS,                                           **Appellee.**

**On appeal from the 94th District Court
of Nueces County, Texas.**

# MEMORANDUM OPINION

**Before Chief Justice Valdez and Justices Rodriguez and Benavides
Memorandum Opinion by Justice Benavides**

By two issues on appeal, appellant Christopher Garza challenges the sufficiency of the evidence to support his conviction for continuous sexual abuse of a child and the excessiveness of his forty-year sentence. TEX. PENAL CODE ANN. § 21.02 (West, Westlaw through 1st C.S. 2017). We affirm.

## I. BACKGROUND

LAU, Garza's daughter,[1] accused him of sexually abusing her over a five-year period. At the time LAU made the accusation, she was fourteen years old. LAU's outcry was made to her mother in February 2017. Garza was arrested a few weeks later in March 2017. After he was given *Miranda* warnings, Garza gave a videotaped statement to a Corpus Christi Police Department (CCPD) investigator in which he admitted to using LAU's hand to touch his penis through his clothes, to touching her breasts, to having vaginal intercourse with LAU, and to having LAU perform oral sex on him.

LAU testified at trial to the progression of Garza's sexual contact with her from touching through clothing to vaginal penetration five years later. When LAU was approximately nine or ten years old Garza placed her hand on his penis over his clothing and moved her hand until he ejaculated. After the family moved in with LAU's grandmother when she was eleven and twelve, Garza continued to use LAU's hand to masturbate, but he also placed her clothed body on top of his clothed body. After the family moved again to a trailer, Garza continued to use LAU's hand to masturbate with her laying on top of him, but more often than before. The family's next move was to an apartment when LAU was thirteen. According to LAU, Garza continued to use her hand to masturbate, but he also began to place his penis in her mouth and in her anus, in addition to placing his mouth on her breasts. Garza also began having vaginal intercourse with LAU which continued on a nearly daily basis.

---

[1] We use initials for the complainant throughout the opinion to protect the minor's identity. *See generally* TEX. R. APP. P. 9.8 (Protection of Minor's Identity in Parental-Rights Termination Cases and Juvenile Court Cases).

LAU explained that her father told her that if she told anyone about the abuse, he would never see her and her little brother again which scared her. When LAU told her mother about the abuse in February 2017, LAU was scared and nervous.

Julie Denney, a registered nurse at Driscoll Children's Hospital, testified about her interview and physical examination of LAU. When Denney examined LAU two weeks after her last sexual assault by Garza, Denney found no evidence of physical trauma. Denny testified that her findings of no trauma were not unusual.

The State's last witness was Michael Ramos, a CCPD investigator in the Crimes Against Children Unit. Ramos interviewed Garza on March 15, 2017, after reviewing *Miranda* warnings with Garza. *See Miranda v. Arizona*, 384 U.S. 436, 444–45 (1966). Garza initialed each warning and signed the waiver form in which he consented to an interview on videotape. *See id.* Garza was under arrest at the time of the interview. According to Ramos, Garza appeared to understand what was going on, seemed to understand the *Miranda* warnings, and appeared to speak voluntarily. *See id.* After Ramos' testimony, the State rested.

The defense case included Garza's mother, Garza's former girlfriend, and Garza's eldest daughter who was nineteen years old. Each witness described Garza as a good father and a good person. Garza also testified. He denied any sexual contact with LAU. He explained that the day of his CCPD interview he was confused, emotional, and in pain from shoulder surgery. He had not taken his Tylenol with codeine, but had taken Trazadone and something for depression. Garza swore the medications made him drowsy, gave him headaches, and made his depression worse. Garza claimed that he did not understand his rights because "I was already under so much stress already from many

3

other things . . . I was just tired and just had everything going wrong and I had just gave up . . .".

Garza was convicted of continuous sexual abuse of a child by a jury. He elected to be sentenced by the trial court and was sentenced to forty years' imprisonment in the Texas Depart of Criminal Justice—Institutional Division.

Garza timely appealed.

## II. SUFFICIENCY OF THE EVIDENCE

By his first issue, Garza challenges the sufficiency of the evidence to support the jury's verdict. He argues that the jury should have believed his denials at trial and his family's disbelief of LAU's allegations rather than Garza's confession on videotape and LAU's testimony.

### A. Standard of Review

The Court is required to apply the legal sufficiency standard from *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010); *see also Williams v. State*, No. 03-11-00598-CR, 2013 WL 6921489 at *6 n.10 (Tex. App.—Austin Dec. 31, 2013, pet. ref'd) (mem. op., not designated for publication). The *Brooks* court held that the *Jackson* standard "is the only standard that a reviewing court should apply in determining whether the evidence is sufficient to support each element of a criminal offense that the State is required to prove beyond a reasonable doubt." *Brooks*, 323 S.W.3d at 912.[2] *Jackson* requires the reviewing court to "view[] the evidence in the light most favorable to the prosecution," to determine whether "*any* rational

---

[2] "[Texas] no longer employ[s] distinct legal and factual sufficiency standards when reviewing the sufficiency of the evidence to sustain a criminal conviction. *See Merritt v. State*, 368 S.W.3d 516, 525 n.8 (Tex. Crim. App. 2012); *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010).

trier of fact could have found the essential elements of the crime beyond a reasonable doubt." 443 U.S. at 319 (emphasis in original). When a reviewing court views the evidence in the light most favorable to the verdict, it "is required to defer to the [fact-finder]'s credibility and weight determinations because the [fact-finder] is the sole judge of the witnesses' credibility and the weight to be given their testimony." *Brooks*, 323 S.W.3d at 899.

### B. Applicable Law

The testimony of a child sexual assault victim is sufficient to support a conviction even if uncorroborated. TEX. CODE CRIM. PROC. ANN. art. 38.07 (West, Westlaw through 1st C.S. 2017). The elements of continuous sexual abuse of a child are: 1) the defendant committed two or more acts of sexual abuse, 2) during a period that is more than 30 days in duration, and 3) at the time of the commission of each of these acts the defendant was older than 17 and the victim was younger than 14. TEX. PENAL CODE ANN. § 21.02(b); *Mitchell v. State,* 381 S.W.3d 554, 557(Tex. App.—Eastland 2012, no pet.). Sexual abuse under this statute has an expansive meaning including indecency with a child which includes sexual contact. *See* TEX. PENAL CODE ANN. § 21.02(c); *see Dwyer v. State,* 532 S.W.3d 535, 538 (Tex. App.—San Antonio 2017, no pet.) ("An 'act of sexual abuse' includes touching any part of a child's genitals 'with intent to arouse or gratify the sexual desire of any person.'" (citing §§ 21.01(2), 21.02(c), 21.11(a)(1)).

For the year before her outcry, LAU described anal penetration, oral sex on numerous occasions, and vaginal intercourse [3] nearly every day for weeks at a time. LAU testified that she was fourteen when the last of the events occurred. Her medical records included her date of birth in April 2008. LAU was fourteen and younger when the sexual abuse occurred. Garza was the father of five children, the eldest of whom was twenty years old at the time of trial. Defendant was therefore over 17 years old at the time of the events.

The jury was shown Garza's videotaped statement. Although Garza now contests the voluntary and knowing nature of his consent to the interview, on the video, Garza is shown reviewing the *Miranda* warnings orally and in writing and initialing each one. *See Miranda*, 384 U.S. at 444–445. At the beginning of the video, Garza rubbed his right shoulder, but when Ramos asked him if he was all right to continue the interview, Garza responded, "yeah, it's fine." During the interview, Garza admitted to each of the elements of continuous sexual abuse, although his admission is to fewer events than LAU described. *See Buxton v. State*, 526 S.W.3d 666 (Tex. App.—Houston [1st Dist.] 2017, pet. ref'd) (holding evidence sufficient based upon victim's testimony of multiple events of sexual abuse over a five-year period); *see also Le v. State*, No. 05-16-01324-CR, 2018 WL

---

[3] Although these were not the words LAU used, her words meet the definitions in the statute. LAU testified that Garza began placing her hand on his "private part" when she was "about ten" years old. He later would take her hand and place it under his clothing. She also testified that he put his private part in her mouth, and "on the back part of me." The back part of her she said is the place she uses the restroom to poop. Garza would place his private part inside the back part of her. In her forensic interview, LAU told the social worker in part that Garza:

> He would hold my hand on his privates. He would keep his hand on top of my hand and move my hand up and down. He would wear basketball shorts and muscle shirts. He would pull down his shorts and make me touch him. I felt really uncomfortable. I didn't know all about that until I got older. Sticky, kind of gooish stuff would come out of his private and go on my hand.

2001609 (Tex. App.—Dallas no pet.) (mem. op., not designated for publication) (same); *Wesson v. State*, No. 11-16-00269-CR, 2018 WL 1440556 at *5 (Tex. App.—Eastland 2018, no pet.) (mem. op., not designated for publication) (same); *Mitchell v. State*, 381 S.W.3d 554, 564 (Tex. App.—Eastland 2012, no pet.).

The evidence was sufficient to find that Garza committed more than two acts of sexual abuse on LAU over a longer than thirty–day period. We overrule Garza's first issue.

### III. CRUEL AND UNUSUAL PUNISHMENT

Garza's second issue on appeal is his claim that his punishment is disproportionate to the offense which violates his rights under the Eighth and Fourteenth Amendments. U.S. CONST. arts. VIII, XIV. Our first consideration is whether Garza preserved this issue. A review of the record indicates that no objection was made to the sentence during the punishment hearing and no motion for new trial was filed bringing this issue to the attention of the trial court. As a result, Garza did not preserve this issue. TEX. R. APP. P. 33.1; *see Curry v. State*, 910 S.W.2d 490, (Tex. Crim. App. 1995) ("Appellant failed to preserve error on this point of error because there was no objection urged at trial. The appellant never objected at trial concerning cruel and unusual punishment.").

Furthermore, Texas "has traditionally held that punishment assessed within the statutory limits, including punishment enhanced pursuant to a habitual-offender statute, is not excessive, cruel, or unusual." *State v. Simpson*, 488 S.W.3d 318, 322 (Tex. Crim. App. 2016) (citing *Ex parte Chavez*, 213 S.W.3d 320, 323–24 (Tex. Crim. App. 2006)).

Appellant Garza waived his punishment claims, and we overrule Garza's second issue.

**IV.  CONCLUSION**

We affirm.

GINA M. BENAVIDES,
Justice

Do not publish.
TEX. R. APP. P. 47.2 (b).

Delivered and filed the
12th day of July, 2018.