

## Fourth Court of Appeals
### San Antonio, Texas

## MEMORANDUM OPINION

No. 04-21-00293-CR

John Anthony **CLEDE**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 175th Judicial District Court, Bexar County, Texas
Trial Court No. 2019CR3767
Honorable Catherine Torres-Stahl, Judge Presiding

Opinion by:  Beth Watkins, Justice

Sitting:  Patricia O. Alvarez, Justice
Irene Rios, Justice
Beth Watkins, Justice

Delivered and Filed: August 31, 2022

AFFIRMED

John Anthony Clede appeals his convictions for four sexual offenses, claiming the evidence

is insufficient to support his conviction for two of the four offenses and the trial court erred in both

granting a motion to quash a subpoena duces tecum, and in designating one of the outcry witnesses.

We affirm.

### BACKGROUND

In December 2018, C.H. told her mother, Lindsay Heckman, that Clede, Heckman's live-

in boyfriend, had been "touching [her] at night and coming into [her] room and touching [her]

butt." Clede and Heckman argued, and Clede threatened to move out. Ultimately, Clede avoided C.H. at home, but he did not move out. So, on January 23, 2019, C.H. told her middle school counselor what was happening and provided a written statement. C.H. also expressed concern for her younger sister, A.H., because she had seen Clede take A.H. into the master bedroom and lock the door. The middle school counselor called police. A forensic interviewer, Dionisio Hernandez, later interviewed C.H., who related details of several instances of abuse, starting when she was nine or ten years old.

Meanwhile, Jessica Maldonado, a school social worker, interviewed A.H. at her elementary school. A.H. related that Clede "had been touching her, putting his fingers in  her - - her private part."

Police arrested Clede, who made a statement denying any abuse.

Before trial, Clede served Heckman and her civil attorney with subpoenas duces tecum. Heckman's subpoena instructed her to produce, on the first day of trial, the cell phone C.H. used. The attorney's subpoena required her to produce the cell phone that had been in Heckman's possession. Both Heckman and her attorney filed motions to quash the subpoenas duces tecum. The trial court held a hearing on the motions at which Clede's attorney told the judge:

> So, Judge, I'll tell you as an officer of the court when I was appointed on this case two years ago, I had a discussion in this courtroom with [Heckman's attorney], and she informed me that her and her client were in possession of [C.H.'s] cell phone, and it contained exculpatory evidence—I'm not talking about [] just [an] image— it contained exculpatory evidence that would help my client's defense.

Heckman's attorney then testified that she had no recollection of telling defense counsel that the cell phone contained exculpatory evidence. She said she had never looked at the phone and never had it in her possession, though she had discussed its contents with Heckman. From what Heckman's attorney knew, nothing on the phone related to Clede. She knew that the phone contained photographs that would "embarrass the child," but those had nothing to do with Clede.

The trial court refused to authorize a "phone dump" or to perform an in-camera inspection, but otherwise ruled that Heckman would be required to bring the phone to trial. Clede's attorney stated that he would ask Heckman at trial about the contents of the phone.

At trial, a number of witnesses testified, including both children and two outcry witnesses. C.H., who was fourteen at trial, provided details of Clede's abuse. Hernandez testified as an outcry witness about the statements that C.H. made during her interview at ChildSafe. A.H., who was eleven at trial, testified vaguely, stating Clede did bad things to her that made her uncomfortable. Maldonado testified as an outcry witness about the statements that A.H. made during her interview at school. The State also played a "jail call" in which Clede called Heckman and repeatedly told her he would "make it right."

After the State declined to call Heckman as a witness, Clede called Heckman. Outside the presence of the jury, Heckman invoked the Fifth Amendment to "any and all questions." Clede then testified and denied the abuse. He suggested the girls had made up the allegations after he confronted them at a family dinner about sneaking out of the house and took away C.H.'s phone and A.H.'s electronic devices as punishment. According to Clede, the allegations followed "less than a week" later.

The jury convicted Clede of all four counts alleged in the indictment: counts one and two—continuous sexual abuse of C.H. and A.H.; counts three and four—aggravated sexual assault of C.H. and A.H. Clede pled true to enhancements and the trial court sentenced him to two life sentences for the continuous sexual abuse counts and two forty-year terms for the aggravated sexual assault counts. Clede now appeals.

**ANALYSIS**

***Sufficiency***

Clede argues there is legally insufficient evidence to support the convictions on counts two and four—those related to A.H.

*Standard of Review*

We review a challenge to the sufficiency of the evidence under the standard set forth in *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). *See Blea v. State*, 483 S.W.3d 29, 33 (Tex. Crim. App. 2016). Under that standard, we examine all the evidence in the light most favorable to the verdict and resolve all reasonable inferences from the evidence in the verdict's favor to determine whether any rational trier of fact could have found the essential elements of the charged offense beyond a reasonable doubt. *Nowlin v. State*, 473 S.W.3d 312, 317 (Tex. Crim. App. 2015). In a legal-sufficiency analysis, no evidence is ignored because the standard requires a reviewing court to view all the evidence in the light most favorable to the verdict. *Cary v. State*, 507 S.W.3d 750, 759 n.8 (Tex. Crim. App. 2016). "An appellate court cannot act as a thirteenth juror and make its own assessment of the evidence." *Nisbett v. State*, 552 S.W.3d 244, 262 (Tex. Crim. App. 2018). Rather, "[a] court's role on appeal is restricted to guarding against the rare occurrence when the factfinder does not act rationally." *Id*. This rationality requirement is a key and explicit component of the *Jackson* sufficiency standard. *See Jackson*, 443 U.S. at 319.

*Application*

Clede challenges the legal sufficiency of the evidence: (1) that he penetrated A.H.'s sexual organ with his finger (an element of both continuous sexual abuse and aggravated sexual assault as charged in the indictment); and (2) that he did so with intent to arouse or gratify sexual desire (an element of continuous sexual abuse as charged in the indictment). *See* TEX. PEN. CODE ANN. §§ 21.02 (continuous sexual abuse), 22.021 (aggravated sexual assault).

A.H. testified that Clede had done bad things to her in her "mom's room," that she did not feel comfortable with what he was doing, that no one else would be in the room and the door would be closed and locked, and that it happened more than one time. Maldonado testified that she interviewed A.H. at school on January 23, 2019. On that day, A.H. told Maldonado that Clede "had been touching her, putting his fingers in her - - her private part" which A.H. identified as her vagina, that Clede had done so "at least four times" and that the touching took place in the master bedroom, after she would get home from school but before her mom would get home from work. This evidence is sufficient to support the jury's finding that Clede penetrated A.H.'s sexual organ with his finger. *Villalon v. State*, 791 S.W.2d 130, 133 (Tex. Crim. App. 1990) (appellate court must consider all evidence, both outcry and non-outcry, admitted at trial before concluding that evidence of penetration was insufficient).

Evidence of repeated penetration is also evidence establishing an intent to arouse or gratify a defendant's sexual desires. *See Abbott v. State*, 196 S.W.3d 334, 340 (Tex. App.—Waco 2006, pet. ref'd) (noting "the conduct itself is sufficient to infer intent."). Further, Hernandez testified that C.H. told her about Clede's specific acts of abuse and that after one act, "it felt like water came from his area." C.H. herself testified that although Clede did not talk during the abuse, he "kind of, like, grunted." The jury could infer from this evidence that Clede's assaults of A.H. were performed with the same intent. *Morgan v. State*, 692 S.W.2d 877, 881 (Tex. Crim. App. 1985). We therefore hold a rational jury could have found Clede penetrated A.H.'s sexual organ with his finger, and that he did so with the intent to arouse or gratify his sexual desire. *Dwyer v. State*, 532 S.W.3d 535, 539–40 (Tex. App.—San Antonio 2017, no pet.) (evidence of actual arousal sufficient to prove intent). We overrule Clede's sufficiency complaint.

***Subpoena Duces Tecum***

Next, Clede argues that the trial court abused its discretion when it refused to perform an in-camera inspection of C.H.'s cell phone. He further argues that this refusal, combined with Heckman's invocation of her Fifth Amendment privilege against self-incrimination, deprived him of his rights to confrontation, compulsory process, and a fair opportunity to defend against the State's accusations.

*Applicable Law*

The Constitution guarantees a criminal defendant a meaningful opportunity to present a complete defense. *Crane v. Kentucky*, 476 U.S. 683, 690 (1986). A criminal defendant's right to present evidence "has constitutional dimensions," drawing from the Sixth Amendment rights to confrontation and compulsory process. *United States v. Nixon*, 418 U.S. 683, 711 (1974). The confrontation clause guarantees a criminal defendant both the right to physically confront hostile witnesses at all stages of trial and the right to cross-examine such witnesses. *Lopez v. State*, 18 S.W.3d 220, 222 (Tex. Crim. App. 2000). The compulsory process clause preserves the right of a defendant in a criminal trial to have a compulsory process for obtaining favorable witnesses. *Coleman v. State*, 966 S.W.2d 525, 527–28 (Tex. Crim. App. 1998) ("The Sixth Amendment right to compulsory process 'is in plain terms the right to present a defense, the right to present the defendant's version of the facts as well as the prosecution's to the jury so it may decide where the truth lies.'") (quoting *Washington v. Texas*, 388 U.S. 14, 19 (1967)).

But neither right includes the right to compel a witness to waive the Fifth Amendment right against self-incrimination. *United States v. Ramos*, 537 F.3d 439, 448 (5th Cir. 2008) (a witness's constitutional privilege against self-incrimination overrides a defendant's constitutional right to confrontation); *Bridge v. State*, 726 S.W.2d 558, 567 (Tex. Crim. App. 1986) (a witness's constitutional privilege against self-incrimination overrides a defendant's constitutional right to

compulsory process of witnesses). Rather, the defendant's right to confrontation and to present evidence must yield to the opposing Fifth Amendment privilege against self-incrimination if the witness has a legitimate fear of possible incrimination. *Walters v. State*, 359 S.W.3d 212, 215–16 (Tex. Crim. App. 2011).

In Texas, the constitutional rights to confrontation and compulsory process, as well as the mechanisms to enforce those rights, are reflected in articles 1.05, 24.01, 24.02, and 24.03 of the Texas Code of Criminal Procedure. TEX. CODE CRIM. PROC. ANN. arts. 1.05, 24.01–24.03. Article 1.05 provides an accused "shall be confronted with the witnesses against him, and shall have compulsory process for obtaining witnesses in his favor." *Id*. art. 1.05. Article 24.01 authorizes issuance of a subpoena to "summon one or more persons to appear" before a court to testify in a criminal action. *Id*. art. 24.01. Article 24.02 provides a subpoena duces tecum may direct a witness to produce in court "any instrument of writing or other thing" "in his possession . . . desired as evidence." *Id*. art. 24.02. And article 24.03 describes how to obtain a subpoena in a felony case. *Id*. art. 24.03. These provisions authorize the issuance of subpoenas and subpoenas duces tecum via application to the district clerk attesting that the testimony would be "material to the State or to the defense." *Id*. art. 24.03(a). Issuance of the subpoena is a matter of right on written application identifying the witness and on assertion that the testimony sought is material. *Shpikula v. State*, 68 S.W.3d 212, 221 (Tex. App.—Houston [1st Dist.] 2002, pet. ref'd). But a subpoena duces tecum in a criminal case "does not allow a party to seize documents or other tangible things from a witness and dispossess said witness of the property requested." *In re State*, 599 S.W.3d 577, 595 (Tex. App.—El Paso 2020, orig. proceeding). Rather, "a subpoena duces tecum only goes so far as to secure the availability of evidence in connection with a court hearing." *Id*. at 594.

We review a trial court's ruling on a motion to quash a subpoena for abuse of discretion. *Muennink v. State*, 933 S.W.2d 677, 684 (Tex. App.—San Antonio 1996, pet. ref'd). Likewise, we

apply an abuse of discretion standard to review issues regarding limitations on the right to cross-examination and compulsory process, including a trial court's decision to allow a witness to invoke her Fifth Amendment privilege. *See Johnson v. State*, 433 S.W.3d 546, 555 (Tex. Crim. App. 2014) (cross-examination); *Ortega v. State*, 472 S.W.3d 779, 791 (Tex. App.—Houston [14th Dist.] 2015, no pet.) (compulsory process); *Fuentes v. State*, 662 S.W.2d 19, 24 (Tex. App.—Houston [1st Dist.] 1983, pet. ref'd) (invocation of Fifth Amendment privilege).

*Application*

Clede claims that the trial court's decision to partially quash the subpoena duces tecum by not conducting "some review of the cell phone" was an abuse of discretion in light of his "plausibility threshold showing that the cell phone would be both material and favorable to the defense." But Clede made no showing of materiality or favorability. *Coleman*, 966 S.W.2d at 527–28. Further, the plain language of the subpoena duces tecum statute "only allows a party to apply for a subpoena that compels a witness to attend a hearing and bring with him or her an item or thing to the hearing that is explicitly mentioned." *In re State*, 599 S.W.3d at 593. Here, Clede achieved that when Heckman appeared at trial with the phone. Clede's constitutional complaints—to the degree they were preserved by Clede's calling Heckman as a witness—are necessarily tied to Heckman's invocation of her privilege against self-incrimination under the Fifth Amendment. *See Navarro v. State*, 863 S.W.2d 191, 202–03 (Tex. App.—Austin 1993, no pet.) (claim of improper invocation waived because it was not asserted at the trial level).

The invocation rendered Clede unable to question Heckman about the content of the phone. But Clede's confrontation and compulsory Sixth Amendment claims are subordinate to Heckman's Fifth Amendment privilege against self-incrimination. *Walters*, 359 S.W.3d at 215–16. For that reason, the trial court could only have abused its discretion in recognizing Heckman's Fifth Amendment privilege if her invocation was illegitimate. But here, C.H. specifically testified that

she told Heckman about the abuse, and that nothing changed. Upon questioning by defense counsel, Heckman's attorney, Hernandez, and Troy Dominguez—a criminal investigator for the Bexar County Sheriff's Office—all acknowledged that Heckman was originally considered a suspect for committing criminal omissions in the care of her children.

Further, the Fifth Amendment privilege against self-incrimination not only extends to answers that would in themselves support a conviction, but also to those which would furnish a link in the chain of evidence needed to prosecute the claimant. *Ohio v. Reiner*, 532 U.S. 17, 21–22 (2001) (per curiam) (babysitter who was with infant within the timeframe of the fatal trauma had valid Fifth Amendment privilege against self-incrimination); *Walters*, 359 S.W.3d at 216 (witness who was with defendant at time of stabbing and may have encouraged the stabbing had valid Fifth Amendment privilege against self-incrimination); *Barcenes v. State*, 940 S.W.2d 739, 747 (Tex. App.—San Antonio 1997, pet. ref'd) (mother who left baby in exclusive care of defendant on the night of baby's fatal injuries and who was under indictment for injury to a child by omission had valid Fifth Amendment privilege against self-incrimination).

Here, Clede's rights to confrontation and compulsory process as well as his right to present evidence in his defense appropriately yielded to Heckman's opposing Fifth Amendment right. *Walters*, 359 S.W.3d at 215–16; *Bridge*, 726 S.W.2d at 567. We overrule Clede's statutory and constitutional complaints drawn from the trial court's handling of the subpoena duces tecum.

### ***Outcry***

In his final issue, Clede contends the trial court abused its discretion in designating Hernandez the outcry witness for A.H.

#### *Applicable Law*

Article 38.072 of the Texas Code of Criminal Procedure, which governs admissibility of outcry statements, provides that certain hearsay statements are admissible in the prosecution of

certain offenses, including sexual and assaultive offenses. TEX. CODE CRIM. PROC. ANN. art. 38.072, § 1. This statute applies to statements that: (1) describe the alleged offense; (2) were made by the child against whom the charged offense was allegedly committed; and (3) were made to the first person, eighteen years of age or older, other than the defendant, to whom the child made a statement about the offense. *Id*. § 2(a)(1)–(3). The Texas Court of Criminal Appeals has interpreted the "first person" to mean that "the first person, 18 years old or older, to whom the child makes a statement that in some discernible manner describes the alleged offense." *Garcia v. State*, 792 S.W.2d 88, 91 (Tex. Crim. App. 1990). "[T]he statement must be more than words which give a general allusion that something in the area of child abuse was going on." *Id*.

We review a trial court's determination that an outcry statement is admissible under article 38.072 for an abuse of discretion. *Id.* at 92.

*Application*

Here, the State gave written notice of its intent to introduce C.H.'s outcry through forensic interviewer Hernandez. TEX. CODE CRIM. PROC. ANN. art. 38.072, § 2(b)(1). The trial court held an in-camera hearing to designate outcry witnesses for both children. *Id*. § 2(b)(2). C.H. testified she told three people about the abuse: her mom, her middle school counselor, and Hernandez. C.H. testified that the first time she gave a detailed account was when she talked to Hernandez. The trial court designated Hernandez the outcry witness for C.H.'s statements.

In contrast, A.H. testified she told her mom, the elementary school social worker Maldonado, and then "more people" about the abuse. But A.H. testified she only told details to Maldonado. The trial court designated Maldonado the outcry witness for A.H.'s statements. Although the trial court did not mention Maldonado by name, the whole of A.H.'s testimony focused only on the interview by Maldonado and argument was limited to whether A.H.'s statements to Maldonado were reliable, that is, whether A.H.'s reaction was spontaneous and

consistent or prompted or manipulated by Maldonado. The trial court did not designate Hernandez the outcry witness for A.H. We therefore overrule Clede's article 38.072 complaint.

## CONCLUSION

We affirm the judgment of the trial court.

Beth Watkins, Justice

DO NOT PUBLISH